United States District Court
Southern District of Ohio
Western Division

| | |
|---|---|
| Alice G. Kelly, *et al.* | Case No. 1:04-cv-00615 |
| Plaintiffs | |
| | Beckwith, J. |
| vs. | |
| | MEMORANDUM IN |
| Great Seneca Financial Corp., *et al.* | OPPOSITION TO |
| | MOTION TO DISMISS |
| Defendants | (Doc. 8) |

## INTRODUCTION

Plaintiffs (hereafter "the Kellys") brought this action pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692o (1988 ed. and Supp. V) ("FDCPA"), based upon the conduct of Defendants (hereafter "Great Seneca - Javitch" or "GSJ") in attempting to collect a debt by filing a lawsuit with full knowledge that it had no means of proving the existence and amount of the debt. Great Seneca-Javitch correctly sets out, although at unbelievable length, the standards for deciding motions pursuant to Rule 12(b)(1) and 12(b)(6). (Doc. 8, Motion at 5-7)  However, it does not appear to make a 12(b)(1) argument, even though it mentions that provision several times.  Since judicial immunity is an affirmative defense and therefore not jurisdictional, see *Mullen v. Household Bank-*

1

*Federal Sav. Bank*, 867 F.2d 586, 588 (10th Cir. 1989); *Maestri v. Jutkofsky*, 860 F.2d 50, 52 (2nd Cir. 1988), GSJ's entire argument must be analyzed under Rule 12(b)(6), not 12(b)(1). Moreover, it appears GSJ has left out much of its argument, when its memorandum is compared with those filed in other similar cases such as *Hartman v. Great Seneca Fin. Corp.*, S.D. Ohio, E.D., Case No. 2:04cv972 (Sargus, J.). For example, GSJ does not argue for dismissal of the Count II of the Complaint.[1] Finally, while GSJ attached a 19-page Supplemental Memorandum to a Motion for Leave (doc. no. 9), the record does not indicate that the Court ever ordered that document filed.

In opposing this confusion the Kellys will attempt to respond to what they think GSJ is arguing, in the order in which it appears to be presented. In the course of doing so they will rely upon the facts contained in their Complaint as well as any inferences which may be drawn from them. Such facts and inferences will be set forth as needed during the discussion of the legal merits of this motion, which GSJ presents as follows:

    A. "Lawyers and their clients who participate in judicial proceedings are entitled to absolute [judicial] immunity from suit for

---

[1] This Court has already twice rejected motions to dismiss Consumer Sales Act claims based on conduct similar to that alleged here. See *Hartman v. Asset Acceptance Corp.*, S.D. Ohio No. 1:03-cv-113, Order dated Sept. 29, 2004 (copy attached); *Blevins v. Hudson & Keyse, Inc.*, *et al.*, S.D. Ohio No. 1:03-cv-241, Orders dated Sept. 29, 2004 (copies attached).

their statements which are reasonably related to and made in the course of those proceedings." (Doc. 8, GSJ Memo. at 9-20)

     B.  If construed to regulate GSJ's conduct in this case, the FDCPA violates the Tenth Amendment and the Commerce Clause. (*Id*. at 20-24)

     C.  The complaint fails to state a claim for the violation of any section of the FDCPA. (*Id*. at 24-32)

     D.  If the Court dismisses the FDCPA claims it should decline to exercise supplemental jurisdiction over the state claims. (*Id*. at 32-34)

None of these arguments is meritorious, and the Kellys will respond to them in the order in which they were presented.

## ARGUMENT

A.  GRANTING ABSOLUTE JUDICIAL IMMUNITY TO DEBT COLLECTORS FOR CONDUCT DURING LITIGATION WOULD REQUIRE THIS COURT TO OVERRULE A SUPREME COURT PRECEDENT, WHICH THIS COURT DOES NOT HAVE THE POWER TO DO.

*Heintz v. Jenkins*, 514 U.S. 291 (1995), arrived in the Supreme Court as the result of a conflict between the Sixth and Seventh Circuits. (*Id*. at 294)  The Sixth Circuit case, *Green v. Hocking*, 9 F.3d 18 (6th Cir. 1983), had facts identical to those of the instant case.  Hocking, the debt-collector attorney, filed a state-court complaint against Green where he allegedly misstated the amount Green owed his creditor-client.  After settling the state-court case, Green sued Hocking in federal court, claiming that Hocking's litigation conduct violated the FDCPA and

specifically 15 U.S.C. § 1692f, one of the provisions the Kellys are asserting here. The Sixth Circuit held "that the actions of an attorney while conducting litigation are not covered by the FDCPA." (*Id*. at 22)

In *Heintz* the debt-collector attorney also sued in state court, but the FDCPA plaintiff (the debtor) based his subsequent suit on a letter sent during state-court settlement negotiations rather than on a pleading. 514 U.S. at 293. A unanimous Supreme Court held that the FDCPA "applies to attorneys who regularly engage in consumer-debt-collection activity, even when that activity consists of litigation." (*Id*. at 299; internal quotation marks omitted.) Nowhere in these decisions is the doctrine of absolute judicial immunity discussed.

GSJ's memorandum presents dozens of pages on the history and application of that doctrine, ties it to the First Amendment, and concludes that it should protect debt collectors from *all* FDCPA liability based upon litigation conduct. However, GSJ makes no attempt to distinguish *Heintz* itself. The problem with GSJ's argument is that *if it is correct, Heintz v. Jenkins was wrongly decided*. Put another way, the Supreme Court in *Heintz* flatly held that debt collectors are liable for FDCPA violations based upon litigation conduct; if GSJ's theory is accepted, debt collectors are *not* liable for FDCPA violations based upon litigation conduct.

In these circumstances, GSJ's position cannot prevail, as this Court simply does not have the power to overrule a Supreme Court case.  See, *e.g.*, *U.S. v. Jacobs*, 244 F.3d 503, 508 (6th Cir. 2001); *Taylor v. Perrini*, 503 F.2d 899, 907 (6th Cir. 1974).  If GSJ is telling this Court that the Supreme Court *would have* decided *Heintz* differently if only it had had the benefit of GSJ's constitutional and other arguments, it should provide a citation permitting this Court to do so.  Such speculation, usually based upon a change in personnel in the Supreme Court, is highly inappropriate.  See *e.g.*, *Felton v. Secretary*, 739 F.2d 48, 72 (2nd Cir. 1984) ("it is not appropriate for us to speculate how these three Justices would vote now that *stare decisis* is a factor, . . . and even less so for us to engage in prediction with respect to the others."); *Dronenburg v. Zech*, 746 F.2d 1579, 1583 (C.A.D.C. 1984), where Judge Bork reviewed the various methods by which lower court judges may criticize Supreme Court cases without attempting to overrule them, such as writing "a concurring opinion analyzing the problem and plainly suggesting that either the Supreme Court or Congress do something about it."  While the Kellys and their attorneys understand GSJ's wish to preserve its arguments for ultimate re-submission to the Supreme Court, those arguments must be rejected at this level.

Moreover, GSJ's arguments are poorly reasoned and contrary to all Supreme Court precedent. They will therefore fail even if ultimately considered by that Court. For example (and briefly), the entire GSJ theory is based on the fiction that GSJ's litigation conduct consisted of speech protected by the First Amendment. GSJ appears to believe that in bringing false collection claims it is exercising its "right to petition" and "the citizen's right to speak freely . . . ." (*Id*. at 14) However, virtually all of its authorities concern actions for defamation based upon derogatory statements made in litigation, whereas the Kellys' action is more akin to a common law malicious prosecution or abuse of process suit: It is the deception, harassment, and misuse of the court system which the Kellys is complaining of (see Complaint, ¶ 18), not character assassination. GSJ cannot cite a single authority holding that the defense of absolute judicial immunity trumps a suit for malicious prosecution or abuse of process, no matter what words appear in the prior pleadings. Free speech is simply not implicated by the facts of this case.

B.  GSJ'S TENTH AMENDMENT AND COMMERCE CLAUSE ARGUMENTS WOULD, IF ACCEPTED, OVERRULE *HEINTZ V. JENKINS*.

For the same reasons set forth in Part A, *supra*, this Court does not have the power to overrule *Heintz v. Jenkins* by declaring the FDCPA unconstitutional, as GSJ argues it should. (Doc. 8, GSJ Memo. at 20-24). Moreover, GSJ's key argument – that the FDCPA should not be interpreted to govern *the procedure*

established for the adjudication of disputes in state courts – is flawed at its core. No one is claiming that GSJ's procedural violations should be a basis for FDCPA liability; rather, it is the substance of GSJ's litigation conduct, *i.e.*, bringing a lawsuit against a debtor "knowing that they did not have any means of proving that such debt was owed or any means of obtaining such evidence" (Complaint, ¶ 15), which is at the heart of the Kellys' claim. GSJ's constitutional arguments are therefore insufficient and must be rejected.

D.  A PLAINTIFF WHO ALLEGES THAT A DEBT COLLECTOR FILED A LAWSUIT KNOWING IT HAD NO MEANS OF PROVING OWNERSHIP OF THE ALLEGED DEBT, AND KNOWING IT HAD NO MEANS OF OBTAINING EVIDENCE OF THE AMOUNT OF THE DEBT, STATES A CLAIM FOR AN UNFAIR OR UNCONSCIONABLE ACTION WITHIN THE MEANING OF 15 U.S.C. § 1692f, FOR A FALSE, DECEPTIVE OR MISLEADING REPRESENTATION IN THE COLLECTION OF A DEBT WITHIN THE MEANING OF 15 U.S.C. § 1692e, AND FOR HARASSING, OPPRESSING, AND/OR ABUSIVE CONDUCT WITHIN THE MEANING OF 15 U.S.C. § 1692d .

With regard to the merits of this case, GSJ makes a strictly statutory argument in the hope that, without any development of facts through discovery, each of the Kellys' five alleged violations of the FDCPA (Complaint, ¶ 18) will be dismissed for failure to state a claim upon which relief can be granted. GSJ acknowledges, however, that this can only occur if "the plaintiff would not be able to recover under *any* set of facts that could be presented consistent with the allegations of the complaint." (GSJ Memo. at 6)  Thus, GSJ is telling this Court

that none of the violations alleged by the Kellys can stand even if they prove, for example, that:

- Great Seneca never obtained an assignment of the Kellys' debt, either from the original debtor or from an assignee of the original debtor, sufficient to meet Ohio's requirements for a creditor filing suit against a debtor.

- Great Seneca and/or Javitch knew this, or had reason to know it.

- Great Seneca never obtained from the original debtor, or from an assignee of the original debtor, any payment schedule or other documentary proof demonstrating the amount of the debt allegedly owed by the Kellys.

- Great Seneca and/or Javitch knew this, or had reason to know it.

- The above conduct of Great Seneca and Javitch was not limited to the Kellys' case, but rather takes place on a routine basis.

- These practices are profitable because of the high rate of default judgments obtained.

As we will demonstrate below, this position is fallacious. Therefore, the Kellys' claim should not be dismissed; rather, they should be permitted to conduct discovery and prove their case.

1. <u>The Facts Alleged by the Kellys All Constitute Potential Violations of 15 U.S.C. § 1692e As Well As Three Different Subsections of That Provision</u>.

At the outset, to commit a violation of Section 1692e a debt collector need not violate any of the specific subsections, since Congress expressly made a

general violation sufficient. In other words, "a debt collector may not use *any* false, deceptive or misleading representation or means in connection with the collection of any debt." Whether acts of a debt collector constitute "false, deceptive or misleading representation[s]," is generally a question for the trier of fact. *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 998 (7th Cir. 2003); *Broadnax v. Greene Credit Service*, 106 F.3d 400 (Table), at **4 (6th Cir. 1997)[2]; *Scott v. Fairbanks Capital Corp.*, 284 F.Supp.2d 880, 895 (S.D. Ohio 2003) (Rice, J.); *Pitman v. J.J. MacIntyre Co.*, 969 F.Supp. 609, 613 (D. Nev. 1997). Thus, GSJ is asking this Court to hold as a matter of law that even if it *knew* it was dragging the Kellys into state court based upon a debt it did not own, and the amount of which it could not prove, on the hope they would default and thereby open the way to garnishment, its conduct did not constitute a "false, deceptive, or misleading . . . means in connection with the collection of . . . [a] debt."

GSJ provides no legal authority for this position. The cases it cites in this section of its Memorandum (p. 42) all appear to be summary judgment cases except for one, *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389 (6th Cir. 1998), *which involved a full trial on the merits*. They mostly involved dunning letters and

---

[2] This is the only Sixth Circuit appellate case counsel could find for this proposition.

the *bona fide* error defense.  None approved the conduct the Kellys has alleged in this case.

GSJ goes on to argue (Memo. at 43-46) that the *procedure* it used in its state court action against the Kellys was beyond reproach.  This misses the point – the Kellys are not complaining about what documents GSJ did attach or should have attached to its complaint.  They are complaining about the conduct of a debt collector and its debt-collector attorney who knowingly file fake lawsuits and then drop them when the debtor starts asking embarrassing questions.  In other words, it is the *substance* of GSJ's litigation conduct which is at issue here, not its adherence or lack thereof to procedural rules.

GSJ also contests liability under the individual subsections of 1692e, and the Kellys will briefly respond.

> a. 15 U.S.C. § 1692e(2)

This subsection, intended by Congress as a non-exclusive example of a violation of 1692e, makes it a violation to make a "false representation of (A) the character, amount, or legal status of any debt."  GSJ argues that a mere mathematical error in a complaint cannot amount to an FDCPA violation, and the Kellys agree.  However, can it be said as a matter of law, without further development of the record, that when a debt collector

knowingly sues for a dollar amount which it cannot prove, and/or states that it (or its client) owns a debt when it knows it cannot prove that fact either, the debt collector has not made a false representation about the amount and/or legal status of that debt? Rule 12 jurisprudence will not support such a conclusion, and GSJ has not provided authority to the contrary.

      b.  15 U.S.C. § 1692e(5)

The same is true for this subsection, which prohibits a debt collector from making a "threat to take any action that cannot legally be taken . . . ." Rule 17(A) of the Ohio Rules of Civil Procedure provides that "every action shall be prosecuted in the name of the real party in interest." The Supreme Court of Ohio has held that "a real party in interest is one who is directly benefited or injured by the outcome of the case . . . ," so that proof of an assignment is necessary to permit an assignee to remain in the litigation. *State ex rel. Botkins v. Laws*, 632 N.E.2d 897, 902 (Sup. Ct. Ohio 1994). If the Kellys' allegations are true there is no way GSJ can meet this test. Therefore, it cannot obtain a dismissal of this claim on the facts currently before the Court.

      c.  15 U.S.C. § 1692e(10).

This subsection makes it a violation of the general provision to use "any . . . deceptive means to collect or attempt to collect any debt . . . ." All of the arguments set forth above apply equally to this claim. It cannot be dismissed on a Rule 12 motion.

    2.  <u>The Kellys' Allegations Also State a Claim Under 15 U.S.C. § 1692d</u>.

This Section prohibits a debt collector from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." GSJ argues briefly (Memo. at 31) that action which can lawfully be taken, such as the filing of a lawsuit, can never amount to harassment, oppression or abuse as a matter of law, citing *Pearce v. Rapid Check Collection, Inc.*, 738 F.Supp. 334 (D.S.D. 1990). However, that case involved letter writing by the debt collector, and the court only reached a decision on harassment after a full trial. On the record currently before the Court there is no basis for a legal decision taking the harassment issue away from the jury by means of a Rule 12 motion.

    3.  <u>Absent Any Authority to the Contrary it is Up to the Jury to Decide Whether GSJ Has Violated 15 U.S.C. § 1692f By Attempting to Collect Amounts Not Permitted By Agreement or By State Law</u>.

The cases cited by GSJ in this section of its Memorandum (p. 31-32) hold that a federal court must use state law to determine a violation of the *second* part of

1692f(1), which prohibits a debt collector from attempting to collect any amount "unless such amount is expressly . . . permitted by law." This subsection (and the cases) concern service charges, attorney fees and the like. The conduct in question in this case, however, is more correctly analyzed under the general language of 1692f, "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," and under the *first* part of f(1), which refers to the amount "expressly authorized by the agreement creating the debt."

GSJ has not made any argument whatsoever as to why its conduct in bringing a fake lawsuit in the circumstances described in the Complaint is not covered by 1692f as a matter of law. As noted in Part D(1) above, such questions are for the trier of fact.

GSJ also fails to deal with its contract problem – if, as alleged, it has no means of proving that Great Seneca is the owner or assignee of a contract between the original creditor and the Kellys, and cannot even produce that contract, it certainly has no way of demonstrating that the amount claimed in its state-court complaint was "authorized by the agreement creating the debt." Without putting forth either authority or reasoning to counter the plain language of the statute, it cannot expect to have this part of the Kellys' claim dismissed as a matter of law.

E.  THE STATE-LAW ARGUMENT

The Kellys have no quarrel with GSJ's argument concerning supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  (Doc. 8, Memo. at 32-33)  As to injunctive relief, the Kellys believe it is premature to enter into a discussion of remedies at this point in the litigation.

## CONCLUSION

For the foregoing reasons Defendant GSJ's Motion to Dismiss should be denied.

Respectfully submitted,

/s/ *Stephen R. Felson*

_____
Stephen R. Felson  (0038432)
617 Vine Street, Suite 1401
Cincinnati, Ohio  45202
(513) 721-4900
(513) 639-7011 (fax)
SteveF8953@aol.com

Steven C. Shane
321 Fairfield Avenue
Bellevue, KY  41073
(859) 431-7800
(859) 431-3100 (fax)
shanelaw@fuse.net

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  **Michael D. Slodov**, 1300 E. 9th St., 14th Floor, Cleveland, OH, 44114.

                                                     */s/ Stephen R. Felson*